IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STANLEY RUSSAW, | CASE NO. 1:23-cv-1669 |
| Petitioner, | DISTRICT JUDGE BENITA Y. PEARSON |
| v. | |
| WARDEN DAVID W. GRAY, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Stanley Russaw filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Russaw is in custody at the Belmont Correctional Institution due to a journal entry of sentence in the case *State v. Russaw*, Cuyahoga County Court of Common Pleas, Case No. CR 19 644949. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts underlying Russaw's conviction as follows:

> {¶2} On October 18, 2019, a Cuyahoga County Grand Jury returned a true bill indicting Russaw on five counts: rape, sexual battery and three counts of gross sexual imposition. The scheduled trial was continued several times due to the coronavirus pandemic.
>
> {¶3} On July 27, 2021, this case was called for a jury trial. At trial, the state's case rested primarily on the testimony of the victim, T.R.
>
> {¶4} T.R. testified that she was a student at the Citizen's Leadership Academy ("CLA") in the sixth grade at the time of the offenses. She identified Russaw as her father and testified that Russaw lived separately from T.R.'s mother. T.R. planned to spend spring break of her sixth-grade year, March 25, 2019, to March 29, 2019, with Russaw at his apartment. At the time of the offenses, T.R. testified that Russaw had a leg injury that made him limp, but he did not need a walker or cane to get around.
>
> {¶5} T.R. testified that she and Russaw visited her paternal grandmother and went to the store before returning to Russaw's apartment. She testified that Russaw then started a "tickle fight" that began "regular at first" but then turned into a massage. Russaw massaged in circles around T.R.'s breasts and then on her breasts in a figure eight motion and licked the deodorant off of her armpit. Later that night, Russaw acted "as a vampire" and said that he "want[ed] to suck [her] blood." He licked her ears and neck and then began "licking my vagina over and over again and he took his finger, he just swiped it." She said "okay, that's enough" but "he just kept going."
>
> {¶6} T.R. testified that Russaw later told her not to talk to anyone about the "tickle fight."

{¶7} T.R. testified that Russaw came into her room the next day while she was watching YouTube videos. He started to rub her stomach and she said: "I don't like that and stuff." She testified "[a]nd he just was like, I just want to rub you." She testified that he touched her on her armpits, her ears, her neck, her breasts, her stomach and her vagina. She also testified that Russaw rubbed his genitals against her buttocks.

{¶8} T.R. testified that she chose to tell her school counselor about these events and not her mother because she was worried that her mother would overreact. She testified that she first told the school counselor, Kathleena Zevallos ("Zevallos"), near the end of the school year. The school counselor called T.R.'s mother and that same day the event was reported to Department of Children and Family Services. Two days later, T.R. was examined by Halle Maziasz ("Maziasz"), a social worker employed by University Hospitals and the Cleveland Clinic.

{¶9} T.R. testified that she told the examiner during the examination what had happened to her. She also testified that she drew circles on a piece of paper that had a picture of a body on it to signify where Russaw touched her. She testified that after she talked about the assault, Russaw told her that she should lie to the court and say that "it was a prank."

{¶10} During cross-examination, Russaw's counsel elicited testimony that T.R. had changed schools from Central to Citizens Leadership Academy ("CLA"). T.R. testified that she had changed schools because she kept getting into fights at Central and had been bullied. She testified that Russaw wore a bandage which covered "his whole leg * * * [from the top of his leg d]own to his ankle" but T.R.'s testimony was unclear on whether it was Russaw's left or right leg that was injured.

{¶11} During cross-examination, T.R. testified that Russaw had touched her breasts but, in the anatomical pictures, T.R. had not circled the breasts.

T.R.'s explanation was that the interviewer "asked where he mainly touched me." T.R. also testified that she told the social worker that Russaw "went figure eight" meaning that he had touched her breasts that way.

{¶12} T.R. testified that she returned to school the week after spring break. She wore a "black hoodie" and when a teacher asked her to remove the hoodie, T.R. simply left the classroom. T.R. also had an argument with Russaw because she thought that he was focusing on her brother and neglecting her. It would be weeks later, on May 17, 2019, before T.R. told Zevallos about the abuse.

{¶13} Following T.R.'s testimony, the trial court broke for the evening. The next day, before the subsequent witnesses testified, the trial court instructed the jury on the elements of the offenses. The court explained that the reason for these instructions was:

> I just want to make sure, get you—continue to get you acquainted with the elements of the charges in this case so that by the time you go back to deliberate you'll be fully conversant with them.

{¶14} The major difference between these instructions and the instructions the trial court gave before voir dire is that these instructions included a specific section on the differences between sexual contact and sexual conduct.

> And the reason I have been saying with strange emphasis either sexual conduct for [C]ounts 1 and 2, or sexual contact for [C]ounts 3, 4 and 5, is that they are two different things. So for the rape and the sexual battery charges, sexual conduct does include cunnilingus and without the privilege to do so the insertion, however slight, of

4

any part of the body into the vaginal opening of another. Penetration, however slight, is sufficient to complete vaginal intercourse.

For the three GSI charges, sexual contact means any touching of an erogenous zone of another including without limitation the thigh, genitals, buttock, pubic region or if the person is a female a breast for the purpose of sexually arousing or gratifying either person.

So just keep in mind for the first two counts we are talking about sexual conduct and for the last three sexual contact.

{¶15} Defense counsel did not object to these instructions.

{¶16} After T.R. testified, the state next called Zevallos. Zevallos testified that she worked at CLA from December 2017 to August 2019. She started working for CLA as an intervention specialist and then took on the role of a guidance counselor. In this role, she helped students with social and emotional behaviors as well as executive functioning skills (skills like working memory, task analysis, keeping things organized and functioning in the classroom).

{¶17} According to Zevallos, T.R. had been to see her many times. Zevallos testified that T.R. was disruptive in class and would either leave or be asked to leave by the teacher up to three times a day. Zevallos testified that T.R. was disciplined for these infractions including at least one suspension. Zevallos called and interacted with T.R.'s father several times, who had normal interactions and showed concern. Zevallos testified that spring break that year took place between March 25, 2019, and March 29, 2019, with the students returning on

5

April 1, 2019. On May 17, 2019, T.R. visited Zevallos and

> [T.R.] explained that she had been staying with her father and that they had been playing and then he had progressively moved down, he initially had been tickling her stomach then it moved down to below her waist.

{¶18} Zevallos notified the principal and contacted Children and Family Services. Zevallos testified that T.R. made this statement with a "flat affect." The following inquiry followed:

> Q. And in your experience as someone who has been trained specifically in trauma, is that unusual when someone is disclosing a traumatic event?
> A. No.
> Q. Have you in fact seen that in individuals who are disclosing or discussing traumatic events?
> A. Yes.
> Q. What else may be some signs or behaviors that individuals have after they've experienced trauma?
> [DEFENSE:] Objection. She isn't qualified as an expert.
> THE COURT: I understand the basis of your objection. Sustained.

{¶19} The state then called Maziasz. Maziasz testified that her job was to assist emergency room physicians by speaking with the family and the patient in order to obtain information for proper medical care and treatment and then discuss "with the attending, the fellow, the resident and together we determine the proper course of treatment." Maziasz identified the medical records of T.R.'s visit. She also read T.R.'s narrative of Russaw's actions into the record.

6

{¶20} T.R. was referred for an external exam that consisted of a "basic skin check, checking heart lungs, breathing, things like that."

{¶21} The state next called Ada Jackson ("Jackson"), a social worker employed by the sex abuse unit of the Cuyahoga County Children and Family Services. Jackson testified that she conducted a forensic interview with T.R. on May 23, 2019. The purpose of this interview was

> [t]o investigate the allegations, to ensure a safety wellbeing of the child and to also refer if the family is wanting medical or mental health services.

{¶22} Jackson authenticated state's exhibit No. 22, a videotaped record of Jackson's interview with T.R. She also authenticated anatomical drawings used in the interview.

{¶23} On cross-examination, Jackson agreed that she coordinated with police prior to the interview. At one point during the interview, Jackson left the room to ask the detective whether they wanted her to ask any questions. She testified that she asked the questions she did because those were the questions she thought to ask. She also agreed that the anatomical drawings used in the interview were undated and did not indicate the interviewer.

{¶24} Russaw was found guilty of all counts. The parties stipulated that the rape (Count 1), sexual battery (Count 2) and one charge of gross sexual imposition (Count 3) were allied offenses of similar import. The trial court sentenced Russaw to life imprisonment with first parole eligibility after ten years for the rape, a prison term of 12 months for Count four (gross sexual imposition) and a prison term of 12 months for Count 5 (gross sexual imposition). The court ordered all three prison terms

> to be served concurrently. The court also imposed five years of postrelease control in Counts 4 and 5.

*State v. Russaw*, No. 111315, 2022 WL 2256008, at *1–4 (Ohio Ct. App. June 23, 2022).

**Procedural background**

*Direct appeal*

Russaw, through counsel, filed a notice of appeal, but the Ohio court of appeals dismissed his appeal as untimely. Doc. 5-1, at 19, 82 (Exhibits 6, 9). Russaw filed a motion for leave to file a delayed appeal, which the Ohio court of appeals granted. *Id*. at 100, 106 (Exhibits 11, 12). In his supporting brief, Russaw raised the following assignments of error:

> 1. Mr. Russaw's conviction is against the manifest weight of evidence in violation of his rights to due process and a fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the State of Ohio Constitution. [1]
>
> 2. Mr. Russaw was denied his right to due process and a fair trial as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution when the court gave partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.
>
> 3. Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio

---

[1] Russaw's claims are reproduced as written.

> Constitution, when counsel failed to object to the court giving partial jury instructions regarding the elements of the charged offenses following the testimony of the alleged victim.
>
> 4. Mr. Russaw received ineffective assistance of counsel in violation of his rights to a due process and a fair trial guaranteed to him by the Sixth and Fourteenth Amendments, United States Constitution and Article I, Section 10, Ohio Constitution, when counsel failed to make a timely objection or request further instructions to the jury when a layperson testified as an expert on trauma.

Doc. 5-1, at 110 (Exhibit 13). On June 23, 2022, the Ohio court of appeals affirmed the trial court's judgment. *Id*. at 157–75 (Exhibit 15).

Russaw appealed to the Ohio Supreme Court. Doc. 5-1, at 177 (Exhibit 16). In his memorandum in support of jurisdiction, he raised the following two propositions of law:

> 1. When a trial court instructs the jury as to the elements of a criminal offense after only a portion of the State's evidence has been presented, this is an improper highlighting and emphasis on one portion of only the State's evidence, thus usurping the fact-finding function of the jury, resulting in an unfair trial and plain error.
>
> 2. A court of appeals errs when it applies an outcome-determinative standard to an ineffective assistance of counsel claim, and when trial counsel fails to object and thus permits the trial court to instruct the jury as to the elements of the offense(s) for which the defendant is on trial, after the State has only presented one witness and before both parties have rested, this constitutes ineffective assistance of counsel.

Doc. 5-1, at 181 (Exhibit 17). On September 27, 2022, the Ohio Supreme Court

declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Russaw's appeal. *Id*. at 201 (Exhibit 19). Russaw moved for reconsideration, *id*. at 203 (Exhibit 20), and on December 13, 2022, the Ohio Supreme Court denied Russaw's motion, *id*. at 212 (Exhibit 21).

*Federal habeas corpus petition*

On August 23, 2023, Russaw filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

> **Ground one**: When a trial court makes statements which have the effect of improperly influencing the jury and interfering with its function as the ultimate factfinder, a defendant has been denied his right to have an impartial jury of his peers decide his fate. (Sixth and Fourteenth Amendments to the United States Constitution.)

> **Ground two**: If a trial court makes statements which have the effect of improperly influencing the jury and interfering with its function as the ultimate factfinder, prejudice to the defendant is inherent and the defendant has been denied due process and a fair trial. (Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.)

> **Ground three**: A criminal defendant has been denied his right to effective assistance of counsel when counsel fails to object to trial court actions which have the effect of improperly influencing the jury and interfering with its function as the ultimate factfinder, and will deprive the defendant of an impartial jury, a fair trial, and due process. (Sixth and Fourteenth Amendments to the United States Constitution.)

Doc. 1-2, at 10, 15, 17. The Warden filed a Return of Writ, Doc. 5, and Russaw filed a traverse, Doc. 7.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have

jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

### Procedural default

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal

constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A]n 'unreasonable application

14

of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

All three of Russaw's grounds for relief stem from the trial court's statements to the jury after the victim testified. For convenience, I discuss Russaw's grounds out of numerical order.

*Ground one is procedurally defaulted*

In ground one, Russaw argues that the trial court improperly influenced and interfered with the jury when the court "reviewed the elements of the offenses with the jury after only the complainant's testimony." Doc. 1-2, at 10, 13.

To recap:

> {¶13} Following T.R.'s testimony, the trial court broke for the evening. The next day, before the subsequent witnesses testified, the trial court instructed the jury on the elements of the offenses. The court explained that the reason for these instructions was:
>
>> I just want to make sure, get you — continue to get you acquainted with the elements of the charges in this case so that by the time you go back to deliberate you'll be fully conversant

with them.

{¶14} The major difference between these instructions and the instructions the trial court gave before voir dire is that these instructions included a specific section on the differences between sexual contact and sexual conduct.

> And the reason I have been saying with strange emphasis either sexual conduct for [C]ounts 1 and 2, or sexual contact for [C]ounts 3, 4 and 5, is that they are two different things. So for the rape and the sexual battery charges, sexual conduct does include cunnilingus and without the privilege to do so the insertion, however slight, of any part of the body into the vaginal opening of another. Penetration, however slight, is sufficient to complete vaginal intercourse.

> For the three GSI charges, sexual contact means any touching of an erogenous zone of another including without limitation the thigh, genitals, buttock, pubic region or if the person is a female a breast for the purpose of sexually arousing or gratifying either person.

> So just keep in mind for the first two counts we are talking about sexual conduct and for the last three sexual contact.

{¶15} Defense counsel did not object to these instructions.

*Russaw*, 2022 WL 2256008, at *2–3. The Ohio court of appeals considered Russaw's claim that the trial court's statements violated his constitutional rights as follows:

17

{¶37} Russaw's second and third assignments of error are related and so we address them together. Russaw's second assignment of error contends that the trial court erred by instructing the jury on the elements of the offenses after the testimony of T.R. Russaw's third assignment of error contends that he received ineffective assistance of counsel insofar as his counsel did not object to the charge.

{¶38} For his second assignment of error, Russaw contends that "it is not so much what the court said but when." That is, Russaw does not contend that the trial court's instruction misstated the law. Instead, Russaw contends that the fact these instructions were given when they were given establishes reversible error. Russaw concedes that there was no objection before the trial court and concedes that he must show plain error for this court to sustain his second assignment of error. "To prevail under a plain error analysis, the appellant bears the burden of demonstrating that, but for the error, the outcome of the trial would clearly have been different." *State v. Bond*, 8th Dist. Cuyahoga No. 110022, 2022-Ohio-1487, ¶ 10.

{¶39} For Russaw's third assignment of error he "must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance." *Id*. at ¶ 20, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "*Strickland's* prejudice inquiry focuses on the likelihood that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, 71 N.E.3d 1034, ¶ 144, quoting *Strickland* at 694.

{¶40} Both the second and third assignments of error require Russaw to show that but for the alleged errors the outcome of the trial would have been different.

{¶41} Russaw argues that the trial court gave the instructions to the jury "immediately after the accuser's testimony[.]" This is not entirely accurate. T.R. testified on Tuesday, July 27, 2021. The trial court gave the disputed charge on Wednesday, July 28, 2021. There was no intervening testimony of other witnesses, but the trial court did not give the additional charge until the morning after T.R.'s testimony.

{¶42} Russaw contends that the trial court's instructions constitute plain error because they "encouraged the jurors to do exactly what they are instructed not to do—form an opinion before the case is submitted to them." Further, Russaw contends that the trial court's instruction prejudiced the defense because the charges were identified before Russaw's motion for judgment of acquittal under Crim.R. 29, and before Russaw had any opportunity to propose instructions under Crim.R. 30.

{¶43} However, Russaw did in fact make his motion under Crim.R. 29 and he assigns no error with respect to the trial court's denial of that motion. Nor does Russaw point to any error in the instructions given, nor any additional instruction he would have requested that could have resulted in a different outcome at trial. Neither of those arguments can establish plain error or ineffective assistance of counsel.

{¶44} As to Russaw's remaining argument, the trial court had previously instructed the jury on the elements of the offenses prior to voir dire. Russaw assigns no error with respect to these earlier instructions. It is clear in the transcript that the trial court decided it was necessary to provide further instruction. Materially, the major difference between the two instructions given was the trial court's clarification that the first two counts require proof of "sexual conduct" and the remaining three counts require proof of "sexual contact."

19

{¶45} Under these circumstances, Russaw has not shown that the outcome of the trial would have been different but for the trial court's instructions after the testimony of T.R. Russaw has neither shown that the trial court plainly erred in giving these instructions nor has Russaw shown that his counsel provided ineffective assistance. We overrule Russaw's second and third assignments of error.

*Russaw*, 2022 WL 2256008, at *6–7.

Because the Ohio court of appeals applied plain error review to Russaw's claim that the trial court erred when it instructed the jury, the claim is procedurally defaulted. Ohio's long-standing contemporaneous objection rule requires a party to make a contemporaneous objection to an alleged trial error to preserve the error for appellate review. *See, e.g., State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001). When an Ohio court applies plain error review, it enforces an independent and adequate state ground that precludes federal habeas review. *Scott v. Mitchell*, 209 F.3d 854, 866–71 (6th Cir. 2000). And the state court's plain error review "does not constitute a waiver of the state's procedural default rules and resurrect the issue." *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (quoting *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006)).

For cause to excuse the procedural default—trial counsel's failure to object—Russaw argues that the trial court's statements to the jury were "so novel that its legal basis [wa]s not reasonably available to counsel." Doc. 7, at 10–11 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)) ("[W]e hold that where a constitutional claim is so novel that its legal basis is not reasonably available

20

to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures").

"A claim qualifies as novel," and can constitute cause to excuse a procedural default, "if, 'at the time of [the] default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel.'" *Gatewood v. United States*, 979 F.3d 391, 395 (6th Cir. 2020) (quoting *Gibbs v. United States*, 655 F.3d 473, 476 (6th Cir. 2011) (in turn quoting *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010)); *see also Reed*, 468 U.S. at 16. "The novelty standard, however, is a high one: the petitioner's counsel must have had 'no reasonable basis upon which to formulate' the question now raised." *Gatewood*, 979 F.3d at 395 (quoting *Gibbs*, 655 F.3d at 476) (in turn quoting *Reed*, 468 U.S. at 14)).

Russaw explains why he believes that the issue counsel should have objected to was novel:

> To understand the novelty of the issue that Mr. Russaw is raising, one must stand in the shoes of his trial counsel. It is the morning after the State's first witness testified—Russaw's accuser—and before the next witness. The judge takes the bench and begins to address the jury. The judge is going over the elements of the crimes *again* with your jurors who now have only the accuser's testimony in their heads. As counsel, what is going through your mind? The judge is speaking. Do you interrupt the court? This has never happened before. There's no roadmap for this. You do not object, and the moment is gone. The event is so unusual that it is the very definition of novel. It is novel enough that this Court should find that there was cause for failing to object at the trial level. And this Court need go no further.

21

Doc. 7, at 11.

Russaw has not met the high novelty standard. First, counsel objecting to something that the trial court does or says is not novel, so it doesn't require a "roadmap." In fact, right before the trial court spoke to the jury about the elements of the charged offences the morning on the second day of trial, the court spoke with counsel outside of the jury's presence to further explain its ruling on an evidentiary issue that defense counsel had objected to regarding the state's next witness, the social worker. Doc. 5-3, at 71–73. After the court finished explaining its reasoning, defense counsel again objected. *Id*. at 73–74. The trial court noted defense counsel's objection. *Id*. at 74. The trial court asked the prosecutor whether he believed that defense counsel would have to object again when the prosecutor would soon call the social worker to testify or "whether the objection just made protects [the defense] record and he doesn't have to say it again." *Id*. at 74–75. The prosecutor answered that he believed that "the record has been protected." *Id*. at 75. The court said that it would not "offer an opinion on the matter" and told defense counsel that he should feel free to lodge another objection when the prosecutor called the social worker if counsel was not confident that the record had been preserved. *Id*. In other words, directly before the court made the statements that Russaw challenges, the court stressed the importance of protecting the record for appeal and encouraged counsel to do so by objecting.

And the evening before the above-cited exchange, the trial court told

counsel:

> And then one thing just before we go. I used to discuss the juror questions with the lawyers at sidebar and see if there are any objections. I didn't do that so far and I won't until something comes up that I'm pretty sure is objectionable. But you can consider since I'm not offering you the opportunity to object before I read them—just look at these as court's questions—don't hesitate to object. You're not going to offend me. Suffice to say, if I read it I'm believing it is not objectionable. But you have a right to preserve your record. If I read a question without discussing it with you first, you find it objectionable, by all means you can object. You can be vociferous or mild or somewhere in between about the objection and it will then be of record. And I may likely overrule it because if I think it's objectionable I will not ask, or talk to you about it first. But the point is, don't be trepidatious about somehow offending the jurors or the court objecting to one of their questions. Be sure to protect your record.

Doc. 5-3, at 68–69. The fact that the trial court expressly invited the parties to object, including when the court instructed the jury, and stressed the importance of protecting the record for appeal, *id.* at 68–69, 74–75, undercuts Russaw's unsupported hypothesis that his attorney was too surprised or uncomfortable to object to the trial court's statements to the jury. And he doesn't cite legal authority indicating that an attorney's hypothetical shyness or surprise can create a "novel claim." *Cf. Gatewood*, 979 F.3d at 395 (a "novel claim" is one in which "at the time of [the] default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel").

Nor does Russaw identify necessary case law that wasn't yet in existence

at the time of his trial in July 2021. Indeed, for the bases of his claim he relies primarily on Supreme Court cases from the 1960s and 1970s. Doc. 1-2, at 10–15 (citing *Duncan v. Louisiana*, 391 U.S. 145 (1968); *Parker v. Gladden*, 385 U.S. 363 (1966); and *Estelle v. Williams*, 425 U.S. 501 (1976)); *see also* Doc. 7, at 5–10 (relying on *Estelle*, *Parker*, and *Holbrook v. Flynn*, 475 U.S. 560 (1986)). He cites *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 210–11 (2017), Doc. 1-2, at 10, but only for the long-recognized principle that the right to a jury trial existed "[i]n the era of our Nation's founding" and is "considered a fundamental safeguard of individual liberty" in the Sixth Amendment, which applies to the states via the Fourteenth Amendment, *Pena-Rodriquez*, 580 U.S. at 210–11. Moreover, *Pena-Rogriquez* was issued four years before Russaw's trial, so that case was available to counsel. Russaw hasn't shown that counsel had "no reasonable basis upon which to formulate the question now raised." *See Gatewood*, 979 F.3d at 395 (internal quotation marks and citation omitted).

Russaw also alleges ineffective assistance of counsel for not objecting as cause to excuse the procedural default. Doc. 7, at 12. But as explained below in ground three, Russaw's ineffective-assistance claim fails on the merits, so it can't serve as cause to excuse the procedural default. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v Washington*, we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). All

24

told, Russaw hasn't shown cause to excuse the procedural default. And because he can't show cause, there is no need to discuss prejudice. *See Hockenbury v. Sowders*, 718 F.2d 155, 160 (6th Cir. 1983) ("The 'cause' and 'prejudice' requirement ... is in the conjunctive. Not finding 'cause' in this case, we need not address the issue of prejudice.").

Finally, Russaw has not shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Russaw doesn't allege actual innocence. Ground one is procedurally defaulted.

*Ground three fails on the merits*

In ground three, Russaw argues that trial counsel was ineffective for not objecting to the court's statements to the jury. Doc. 1-2, at 17.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "The first prong is satisfied when a petitioner 'show[s] that counsel

made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Jones*, 46 F.4th at 487 (quoting *Strickland*, 466 U.S. at 694). "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jones*, 46 F.4th at 487–88. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Jones*, 46 F.4th at 488 (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011). "Or, in more concrete terms, a federal court may grant relief only if *every* "'fairminded juris[t]'" would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101).

*Strickland* commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–90; *Pinholster*, 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the range of

possible 'reasons *Pinholster's* counsel may have had for proceeding as they did'") (citation omitted).

The Ohio court of appeals recited the *Strickland* standard; evaluated Russaw's claim, recited above; and concluded:

> {¶45} Under these circumstances, Russaw has not shown that the outcome of the trial would have been different but for the trial court's instructions after the testimony of T.R. Russaw has neither shown that the trial court plainly erred in giving these instructions nor has Russaw shown that his counsel provided ineffective assistance. We overrule Russaw's second and third assignments of error.

*Russaw*, 2022 WL 2256008, at *7.

Russaw argues that the Ohio court of appeals "misstat[ed] the *Strickland* standard" because in a portion of the decision, it said that he "could not point to anything that 'could have resulted in a different outcome at trial.'" Doc. 7, at 13–14 (citing *Russaw*, 2022 WL 2256008, at *7, ¶43). He argues that "*Strickland* does not require … a showing that, but for ineffective assistance of counsel, [Russaw] would have been acquitted. The standard is the mere 'reasonable probability' of a different outcome." *Id.* at 14 (quoting *Strickland*, 466 U.S. at 694). The portion of the court of appeals' decision that Russaw cites discusses Russaw's argument that that "the trial court's instruction prejudiced the defense because the charges were identified before Russaw's motion for judgment of acquittal under Crim.R. 29, and before Russaw had any opportunity to propose instructions under Crim.R. 30." *Russaw*, 2022 WL 2256008, at *7, ¶42. But when the Ohio court of appeals set forth the applicable

law when it introduced Russaw's claims, it accurately stated that "*Strickland's* prejudice inquiry focuses on the *likelihood* that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at ¶39 (emphasis added). *See Pinholster*, 563 U.S. at 189 ("A reasonable probability" under *Strickland* "is a probability sufficient to undermine confidence in the outcome" which "requires a 'substantial,' not just 'conceivable,' likelihood of a different result") (quoting *Harrington*, 562 U.S. at 112). Russaw doesn't allege that this characterization mis-states the *Strickland* standard.

Russaw reiterates his arguments that the trial court's statements "did incalculable damage to the defense" and that counsel's failure to object satisfies both of the *Strickland* prongs. Doc. 7, at 14–15. To the extent that he incorporates his arguments from ground one, Doc. 7, at 14, he hasn't shown that the trial court's statements "did incalculable damage" to him. In support of ground one he relies on *Parker v. Gladden* and *Estelle v. Williams*. Doc. 1-2, at 12–13. In *Parker*, the Supreme Court held that the trial court's bailiff made unauthorized, private statements to the jury about the defendant's guilt while ushering the jury during their deliberations, which violated the defendant's right to a fair trial. 385 U.S. at 364–65. The Court found that the bailiff's statements to the jury—that the defendant was a "wicked fellow" who was guilty, and if there was anything wrong with finding him guilty the Supreme Court would "correct it"— amounted to "outside influence." *Id.* at 364. Here,

the trial judge made correct statements of law to the jury in his role as the presiding judge.

In *Estelle*, the Court held that the defendant was not entitled to relief on his claim that his right to a fair trial was violated when he was forced to appear at trial wearing his prison uniform. 425 U.S. at 503, 512–13. The Court explained that counsel didn't object to the defendant's manner of dress, so no constitutional violation occurred. *Id*. at 512–13. *Estelle* doesn't help Russaw, either—the issue for Russaw isn't whether he was tried wearing prison garb. And neither *Parker* nor *Estelle* compel the result that Russaw seeks here—a finding that the Ohio court of appeals' rejection of Russaw's ineffective-assistance-of-trial-counsel claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *See Harrington*, 562 U.S. at 103. Ground three fails on the merits.

> *Ground two is not cognizable, procedurally defaulted and fails on the merits*

Ground two also relates to the trial court's instructions to the jury that it gave after the victim had testified. Doc. 1-2, at 15. Ground two reads:

> If a trial court makes statements which have the effect of improperly influencing the jury and interfering with its function as the ultimate factfinder, prejudice to the defendant is inherent and the defendant has been denied due process and a fair trial. (Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.)

Doc. 1-2, at 15. Ground two is presented as a hypothetical. But Russaw is not

29

"in custody" based on a hypothetical, so any purported hypothetical claim that Russaw asserts here is not cognizable. *See* 28 U.S.C. § 2254(a) (habeas relief is only available for a person "in custody in violation of the Constitution or laws or treaties of the United States.").

Even if ground two can be read to assert a claim that the trial court's statements "improperly influenc[ed] the jury and interfere[ed] with its function as the ultimate factfinder" so that "prejudice to the defendant is inherent," Doc. 1-2, at 15, such a claim is procedurally defaulted.[2] In support of his claim that prejudice should be presumed in this case, Russaw relies exclusively on *Estes v. State of Texas*, 381 U.S. 532 (1965). *Id.* at 15–16. *Estes* was a pre-trial publicity case in which the United States Supreme Court followed a line of its prior cases—namely *Rideau v. State of Louisiana*, 373 U.S. 723 (1963) and *Turner v. State of Louisiana*, 379 U.S. 466 (1965)—to hold that the defendant was entitled to a presumption of prejudice on his claim that his due process rights were violated by intense and widespread pre-trial publicity. 381 U.S. at 550–51.

Russaw procedurally defaulted this claim because he didn't present it on direct appeal to the Ohio court of appeals. To be sure, Russaw asserted that the trial court's statements violated his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments, Doc. 5-1, at 49, 53, but

---

[2]     The Warden did not allege that ground two is procedurally defaulted. But a court may raise the procedural default issue on its own. *See Whitman v. Gray*, 103 F.4th 1235, 1239–40 (6th Cir. 2024).

in doing so, he argued only that the trial court had committed plain error,[3] *id*. at 51–53. In support of his argument, Russaw cited Ohio Criminal Rule 30 (jury instructions) and Rule 52 (plain error), and sections of the Ohio Revised Code and Ohio Jury Instructions that pertain to procedures that Ohio courts follow for jury instructions. *Id*. at 51–53. He cited an Ohio Supreme Court case that applied plain error review to a challenged jury instruction. *Id*. at 51 (citing *State v. Williford*, 551 N.E.2d 1279, 1284 (Ohio 1990)). The *Williford* court noted that "[t]he plain error rule" found in Ohio Criminal Rule 52 "should not be invoked unless, but for the error, the outcome of the trial would clearly have been otherwise." 551 N.E.2d at 1284. Russaw made similar arguments in his appeal to the Ohio Supreme Court.[4] *See* Doc. 5-1, at 187–92 (arguing that the trial court's statements constituted "plain error").

---

[3]    Moreover, "'[G]eneral allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017) (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).

[4]    The first and only time Russaw presented to the Ohio courts the claim in ground two was in his motion for reconsideration of the Ohio Supreme Court's denial of his discretionary appeal, Doc. 5-1, at 206–10, which the court denied without explanation, *id*. at 212. Raising this claim for the first time in a motion for reconsideration in the Ohio Supreme Court does not preserve the claim for federal habeas review. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (a claim raised for the first time in a motion for reconsideration of the Ohio Supreme Court's decision dismissing a discretionary appeal is procedurally defaulted).

What Russaw did *not* do was argue that he didn't have to show prejudice to prevail because prejudice was inherent from the trial court's actions and, therefore, should be presumed.[5] He didn't cite *Estes*, the United States Supreme Court case on which he now relies for his constitutional theory that prejudice should be presumed. So Russaw failed to present both the factual and legal underpinnings of his claim to the state courts, *see McMeans*, 228 F.3d at 681, and ground two is procedurally defaulted.

Ineffective assistance of appellate counsel could not serve as cause to excuse the procedural default because Russaw hasn't filed in state court an Ohio Appellate Rule 26(B) application to reopen to allege ineffective assistance of appellate counsel.[6] So any ineffectiveness of appellate counsel claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000)

---

[5]     Russaw uses the term "inherent prejudice," Doc. 1-3, at 15–16, which is the same as saying that prejudice is presumed, *see Estes*, 381 U.S. at 544 (explaining that in cases in which "no prejudice was shown, but the circumstances were held to be inherently suspect," then "prejudice to the accused was presumed"); *see also Skilling v. United States*, 561 U.S. 358, 380–82 (2010) (describing *Estes*-related cases as cases in which prejudice was presumed). Either way, Russaw didn't argue to the Ohio court of appeals that the trial court's statements amounted to "inherent prejudice" or that prejudice should be presumed. *See* Doc. 5-1, at 49–53.

[6]     Ohio Appellate Rule 26(B) provides:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

(Ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted). Further, Russaw has not alleged in his federal habeas filings any reason indicating good cause for filing a late Rule 26(B) application, almost two years after it would have been due. *See, e.g., Prieto v. Schweitzer*, No. 4:18-cv-222, 2019 WL 2605639, at *8, n.5 (N.D. Ohio May 31, 2019) (the petitioner's failure to file an Ohio Appellate Rule 26(B) application to reopen or provide any reason why he had not filed one procedurally defaulted any ineffective assistance of appellate counsel claims), *report and recommendation adopted*, 2021 WL 147049 (N.D. Ohio Jan. 15, 2021); *Rice v. Welch*, No. 3:10-cv-1916, 2014 WL 4794585, at *26 (N.D. Ohio Sept. 23, 2014).

Alternatively, ground two fails on the merits. The Supreme Court case that Russaw relies on is *Estes v. Texas*. Doc. 1-2, at 15–16; Doc. 7, at 12–13. In *Estes*, the Court held that the circumstances of the pre-trial publicity in that case necessitated the application of the rule in *Rideau*—a prior pre-trial publicity case[7]—that the defendant's due process rights were violated "even without a showing of prejudice." *Estes*, 381 U.S. at 538, 550–51. In *Estes*, "[m]assive pretrial publicity totaling 11 volumes of press clippings … had given

---

[7]      In *Rideau*, the Court found that the defendant's due process rights were violated when the trial court denied the defendant's motion to change venue after a videotape of the police's jailhouse interview of the defendant, in which the defendant admitted that he committed the charged crimes, was broadcast for days on local television. 373 U.S. at 725–27.

[the case] national notoriety" and the parties "conceded that the activities of the television crews and news photographers led to considerable disruption of the [pre-trial] hearings." 381 U.S. at 536. The Court explained that all of this, and more:

> emphasized the notorious character that the trial would take and, therefore, set it apart in the public mind as an extraordinary case or … something "not conventionally unconventional." When the new jury was empaneled at the trial four of the jurors selected had seen and heard all or part of the broadcasts of the earlier proceedings.

*Id.* at 538. The Court found that the defendant wasn't required to show actual prejudice to show a constitutional violation because the case was of a kind in which "a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process." *Id.* at 542–43.

The issue in Russaw's case was not about pre-trial publicity. So the holding in *Estes* doesn't provide the relief that Russaw seeks. *See Fields*, 86 F.4th at 231 (to prevail under section 2254(d)(1), the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court). And the Ohio court of appeals' failure to extend the rule in *Estes* to apply to Russaw's case cannot provide Russaw with relief. *See White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat

34

the failure to do so as error."). So even if ground two is not procedurally defaulted, it would fail on the merits.

**Conclusion**

For the reasons set forth above, I recommend that Russaw's Petition be denied.

Dated: July 8, 2024

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).